UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JAMES FRASCATORE,                                   :
                                                    :
                              Plaintiff,            :
              -against-                             :                    1:17-cv-7502-GHW
                                                    :
                                                    :                    MEMORANDUM OPINION
JAMES BLAKE, TRACY CATAPANO-FOX,                    :                    AND ORDER
CITY OF NEW YORK, NEW YORK CITY                     :
POLICE DEPARTMENT, NEW YORK CITY                    :
CIVILIAN COMPLAINT REVIEW BOARD,                    :
and CCRB EMPLOYEES JOHN DOE #1-5,                   :
                                                    :
                              Defendants.           :
------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

On September 9, 2015, Officer James Frascatore was sent to the Grant Hyatt Hotel in New
York City, tasked to take the potentially dangerous ringleader of a criminal conspiracy into custody.
He was provided the criminal's photograph. The picture "portrayed a man bearing a striking
resemblance to the way Defendant Blake appeared that day." They were both African-American.
When he saw a man matching the description and picture of the ringleader, Frascatore tackled and
detained the man. But Frascatore and fellow officers quickly determined that the man he had taken
down was not a criminal, but, rather, a prominent former professional tennis player in town for the
U.S. Open.

In the days and weeks that followed, the media lambasted Frascatore. He found his face
plastered on the front page of the New York *Post*, depicted as a "psycho cop" with a "shocking"
disciplinary record. In their stories, the media relied on information contained in files that
Frascatore alleges the CCRB and its Executive Director, Tracy Catapano-Fox, had released in 2014,
prior to the incident. Rather than standing behind him, the NYPD criticized and scapegoated him.

Years later, in 2017, Blake published a book called *Ways of Grace* in which Blake tells the story of his encounter with Frascatore (the "Incident"). In the book, and in media appearances in connection with the book's release, Frascatore asserts that Blake defamed him by mischaracterizing the incident and by implying that he was a racist. Frascatore asserts that the CCRB and the NYPD damaged his reputation and made his dreams of returning to being a teacher after his retirement from the NYPD impossible.

In this case, Frascatore asserts procedural due process "stigma-plus" claims against the NYPD, the City of New York, the CCRB, and Catapano-Fox. Frascatore also asserts that Catapano-Fox, the CCRB, and the NYPD intentionally discriminated against him on the basis of his race, in violation of 42 U.S.C § 1981. Finally, Frascatore brings a claim against Blake for defamation. Frascatore's stigma-plus claims both fail because he did not allege that any statements made by the NYPD, the City of New York, the CCRB, and Catapano-Fox were false, or that any statements were made close enough in time to any adverse employment actions. The stigma-plus claim against the CCRB and Catapano-Fox fails for the additional reason that Frascatore did not allege the utterance of any statements at all by those defendants. Frascatore's stigma-plus claims against the City of New York and the NYPD fail for the additional reason that the statement he attributes to them is not sufficiently derogatory to state a claim. Frascatore's race discrimination claims fails because he did not plead sufficient facts to establish an inference of discriminatory intent. Frascatore's defamation claims fail because, *inter alia*, he does not allege that many of the statements are false, and several of the challenged statements are non-actionable statements of opinion. Accordingly, the motions to dismiss of Blake and the City Defendants are GRANTED.

# I.   BACKGROUND[1]

## A.  Factual Background

James Frascatore is a white NYPD police officer who has had a number of CCRB complaints lodged against him.  Am. Compl. (ECF No. 37) ¶¶ 11, 18.  At some point in or before December 2014, the CCRB released Frascatore's personnel records to attorneys whose clients had CCRB complaints pending against Frascatore.  *Id.* ¶ 18.  In December of 2014, WNYC Radio broadcasted a story that portrayed Frascatore as a "problem police officer with an inordinate number of CCRB complaints and a troubling pattern of misconduct."  *Id.*  In September 2015, Frascatore was assigned to the NYPD's Financial Crimes Task Force (the "Task Force"), where he was working toward a promotion to detective.  *Id.* ¶ 20.

James Blake is a former professional tennis player.  *Id.* ¶ 12.  He is African-American.  *Id.*  In September of 2015, Blake visited New York City to attend the U.S. Open and meetings for the United States Tennis Association Foundation, of which Blake had recently become chairman.  Decl. of Kevin H. Marino ("Marino Decl.") (ECF No. 45), at 6.  While in New York, Blake was staying at the Grand Hyatt Hotel in Midtown Manhattan.  *Id.*

Also in September 2015, the NYPD's Financial Crimes Task Force was poised to take down a fraud ring that had been targeting the company GoButler, a technology startup that offered a service which customers could use to order on-demand delivery of a wide range of items.  *Id.* ¶¶ 20-22.  GoButler had fallen victim to a "sophisticated ring of fraudsters" who used stolen identities and credit card information to order high-end items and use GoButler's couriers to deliver the items to

---

[1] Unless otherwise noted, the facts are taken from the second amended complaint, and are accepted as true for the purposes of this motion.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

members of the fraud ring at hotels. *Id.* ¶ 20. Acting on a tip from GoButler employees, members of the Task Force, including Frascatore, set up a "ruse to intercept and arrest the perpetrators" at the Grand Hyatt Hotel. *Id.* ¶ 21. Frascatore was tasked with making the delivery, and was provided photographs of the suspected members of the fraud ring. *Id.* One of the suspected members of the fraud ring bore a "striking resemblance to the way Defendant Blake appeared" on the day in question. *Id.* ¶ 22. Among other things, both Blake and the "ringleader" were African-American. *E.g.*, *id.* ¶ 12.

On September 9, 2015, the Task Force converged on the Grand Hyatt, and Frascatore saw an individual who "match[ed] the description and picture of the ringleader" who was "standing outside, exactly as the GoButler employees indicated he would be." *Id.* ¶¶ 22-23. Frascatore ran up to the individual, identified himself as a police officer, and placed his hands on the individual. *Id.* ¶ 23. Observing that the individual was pulling away, Frascatore tackled and detained the individual. *Id.* ¶¶ 2, 23. After Frascatore tackled the individual, the individual began acting inconsistently with how Frascatore expected the suspect to act. *Id.* ¶ 24. As the detectives in charge of the operation arrived, they realized that Frascatore had taken down the wrong man. *Id.* The individual was Blake, not the target of the investigation. After a total of approximately 10 minutes in handcuffs, Blake was released. *Id.* ¶ 25.

Something of a media firestorm followed. Police Commissioner Bratton and other NYPD sources made comments to the press, as did Blake. *Id.* ¶ 29. Newspapers ran such headlines as "Psycho Cop: Shocking Record in Blake Case." *Id.* Among other information cited in these articles were Frascatore's personnel records, which, as discussed above, Frascatore alleges the former Executive Director of the CCRB and other CCRB employees had released in 2014. *See id.* ¶ 18.

Subsequently, Frascatore was reassigned to a different precinct, had his overtime cut, and was ordered not to conduct investigations that involved public contact. *Id.* ¶ 35. Following a

disciplinary hearing, Frascatore's departmental charges were "resolved in late 2017 with a penalty that did not include termination," and did include the loss of five vacation days. *Id.* ¶ 37; Decl. of Paul Marks ("Marks Decl.") (ECF No. 41), Ex. B.

In 2017, Blake co-wrote a book called *Ways of Grace*. *Id.* ¶ 41. *Ways of Grace* bills itself as a book about "Stories of Activism, Adversity, and How Sports Can Bring Us Together." *Id.* ¶ 47. In it, Blake tells the story of the Incident. *Id.* ¶ 42. In the course of recounting the Incident and his reactions to it, Blake discusses, among other things, racial profiling, police misconduct, discrimination, and Frascatore's disciplinary history. *See id.* ¶¶ 45-47. Frascatore contends that a series of statements in the book, the majority of which are made in the introduction, are defamatory. Blake promoted his book widely through media appearances, including on multiple television shows. *Id.* ¶ 48-51. On August 30, 2017, Blake appeared on *The Daily Show* on Comedy Central and discussed *Ways of Grace* in general and the Incident in particular. Several weeks later, Blake appeared on *PBS NewsHour* to discuss the same topics. *Id.* ¶ 50. Frascatore asserts that Blake made various defamatory statements about him during his *Daily Show* and *NewsHour* appearances.

**B. Procedural Background**

On October 2, 2017, Frascatore filed a complaint against James Blake, HarperCollins Publishers, LLC, Tracy Catapano-Fox, the City of New York, the NYPD, the CCRB, and five John Doe CCRB Employees. *See generally* Compl. (ECF No. 1). On November 6, 2017, Frascatore voluntarily dismissed HarperCollins Publishers, LLC. ECF No. 22. On January 16, 2018, Frascatore filed an amended complaint. *See generally* Am. Compl. On February 16, 2018, Catapano-Fox, the NYPD, the CCRB, and the City of New York (collectively, the "City Defendants") moved to dismiss the amended complaint, Mot to Dismiss the Am. Compl. (ECF No. 40), as did Blake, Mot. To Dismiss the Am. Compl. (ECF No. 43). Frascatore submitted an affirmation in opposition to Defendants' motions to dismiss, Aff. in Opp'n to Mots. to Dismiss (ECF No. 48), and Blake

submitted a reply in support of his motion to dismiss on April 6, 2018, Reply Mem. Of Law in Supp.

of Mot. to Dismiss (ECF No. 49).

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Id.*  (citing *Twombly*, 550 U.S. at 556).  It is not

enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]"

claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "To survive

dismissal, the plaintiff must provide the grounds upon which his claim rests through factual

allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v.

Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S.

at 679.  The court must accept all facts alleged in the complaint as true and draw all reasonable

inferences in the plaintiff's favor.  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008)

(per curiam).  However,

> '[t]hreadbare recitals of the elements of a cause of action, supported by
> mere conclusory statements, do not suffice.'  A complaint must
> therefore contain more than 'naked assertion[s] devoid of further
> factual enhancement.'    Pleadings that contain 'no more than
> conclusions . . . are not entitled to the assumption of truth' otherwise
> applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (alterations in original) (quoting

*Iqbal*, 556 U.S. at 678-79).  Thus, a complaint that offers "labels and conclusions" or "naked

assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556

U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

In deciding this motion to dismiss, the Court may consider documents that are either incorporated by reference in the complaint or integral to the claims asserted therein. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks and citations omitted).

Here, Frascatore references and quotes from a September 11, 2015 New York *Daily News* article multiple times, Am. Compl. ¶¶ 29, 31, and the quotations from the article form the entire basis for Frascatore's second claim for relief. Frascatore also references and quotes extensively from *Ways of Grace*, and the quotations from the book form the entire basis for Frascatore's fourth claim for relief. As a result, the Court has no difficulty concluding that the September 11, 2015 *Daily News* article and *Ways of Grace* are incorporated by reference in the Amended Complaint such that the Court may consider them in deciding this motion to dismiss.

## III.  DISCUSSION

### A. Stigma-Plus Claims

Frascatore's stigma-plus claims are dismissed because he does not allege that any allegedly defamatory statements were false, and because any allegedly defamatory statements were made too far in time from any adverse employment action. In addition, Frascatore's stigma-plus claim against the CCRB and Catapano-Fox (collectively, the "CCRB Defendants") is dismissed because Frascatore does not allege the existence of any derogatory statements made by the CCRB Defendants, and his stigma-plus claim against the NYPD and the City of New York must be dismissed because the allegedly defamatory statement attributed to an NYPD source is not sufficiently derogatory to state a claim.

Generally, defamation is an issue of state, not of federal constitutional, law. *Vega v. Lantz,*

596 F.3d 77, 81 (2d Cir. 2010) (internal citation omitted). "However, under limited circumstances, federal constitutional relief is available for defamation committed by a government official." *Id.* (internal citations omitted). "Specifically, an action can be grounded in 42 U.S.C. § 1983 when that plaintiff can demonstrate 'a stigmatizing statement plus a deprivation of a tangible interest.'" *Id.* (internal citations omitted).

To bring a "stigma plus" claim, a plaintiff must allege "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Id.* (internal quotation marks omitted). The statement "must denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his profession." *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-31 (2d Cir.1996) (citation omitted). In addition, the statement must have been made "concurrently with, or in close temporal relationship to" the relevant adverse employment action. *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006). The state-imposed burden or alteration of status must be "in addition to the stigmatizing statement," any damage that merely flows from the injury to reputation is not actionable under § 1983. *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (internal quotation marks omitted). "[T]he availability of adequate process defeats a stigma-plus claim." *Segal*, 459 F.3d at 212.

Frascatore's stigma-plus claims must be dismissed because any statements on which the claims could be based were made too far in time from the adverse employment action Frascatore suffered. To state a stigma-plus claim, the plaintiff must show that the stigmatizing statements were made "concurrently with, or in close temporal relationship to" the relevant adverse employment action. *Segal*, 459 F.3d at 212. The release of Frascatore's personnel file occurred no later than

December 2014, when WNYC Radio broadcasted a story based in part on information contained in the personnel file.  *See* Am. Compl. ¶ 18.  The NYPD source's statement was published in a September 11, 2015 article.  *Id.* ¶ 29.  The adverse employment action about which Frascatore complains occurred in "late 2017," *id.* ¶ 37; more specifically, it occurred in November of 2017, Marks Decl., Ex. B.  Thus, the release of the personnel records occurred approximately two years and eleven months before the imposition of Frascatore's penalty, and the NYPD source's statement occurred two years and two months before the imposition of Frascatore's penalty.  As such, neither the release of the personnel records nor the NYPD's statement can be said to have been made "concurrently with, or in close temporal relationship to" the adverse employment action taken against Frascatore.

In addition, Frascatore did not allege that any statements made by the CCRB Defendants, or the statement made by the NYPD source, were false, which alone requires dismissal of Frascatore's stigma-plus claims.  *Vega*, 596 F.3d at 82 (holding that the plaintiff was not entitled to relief where he did not allege that the statements in question were false); *see also DiBlasio v. Novello*, 413 Fed. App'x 352, 356 (2d Cir. 2011) ("Because the statement was not false, it cannot form the basis for a stigma plus claim, however stigmatizing it might appear to be."); *Paterno v. City of New York*, No. 17 CIV. 8278 (LGS), 2018 WL 3632526, at *5 (S.D.N.Y. July 31, 2018) (granting motion to dismiss and explaining that certain statements could not form the basis for a stigma-plus claim "because the Complaint does not claim that they are false"); *Filteau v. Prudenti*, 161 F. Supp. 3d 284, 291 (S.D.N.Y. 2016) (granting motion to dismiss and explaining that "[t]he [First Amended Complaint] does not adequately allege that defendants have made publicly available false information about him, because, quite simply, it does not allege that the [certificate of disposition] is false.").

Even more fundamentally, Frascatore failed to allege the utterance of any statement by the CCRB or Catapano-Fox.  Frascatore's stigma-plus claim against the CCRB Defendants is based on

the harm he suffered as a result of their release of confidential personnel records. *See* Am. Compl. ¶¶ 73-78. Specifically, Frascatore alleges that the CCRB's release of his personnel records "created a media firestorm that resulted in the destruction of Plaintiff's good name," and that, as a result, Frascatore "has been deprived of a liberty interest in his future career." *Id.* ¶¶ 78, 80. However, Frascatore failed to identify any statements that the CCRB Defendants made in connection with the release of his records, or any statement contained in those records. As such, Frascatore has failed to state a stigma-plus claim against the CCRB Defendants. *See, e.g. Paterno*, 2018 WL 3632526, at *4 ("In order to survive a motion to dismiss on a 'stigma-plus' claim, the complaint must plead the particulars of a 'statement sufficiently derogatory to injure' the plaintiff's reputation; not merely general characterizations or summaries of those statements." (citing *Vega*, 596 F.3d at 81; *Filteau*, 161 F. Supp. 3d at 293; *Miley v. Hous. Auth. of City of, Bridgeport*, 926 F. Supp. 2d 420, 432 (D. Conn. 2013)).

In support of his claim against the NYPD and the City of New York,[2] Frascatore identifies one statement by an unnamed member of the NYPD. He alleges that "NYPD sources" told the *Daily News* that Plaintiff should have "'voided the arrest, ma[d]e notifications, and sa[id] I'm sorry.'" Am. Compl. ¶ 29. A review of the article from which Frascatore excerpted this quotation reveals that the context for the quotation is: "When asked what cops are supposed to do in such situations, one high-ranking source said, 'Void the arrest, make notifications and say, I'm sorry!'"

This statement is a far cry from the types of statements or records that courts have held or assumed to be sufficiently stigmatizing to support a stigma-plus claim. *See, e.g., Paul v. Davis*, 424 U.S. 693, 697 (1976) (public designation of plaintiff as an "active shoplifter," being defamatory per se, may impose a stigma); *id.* at 702-06 (reviewing cases finding stigma where government employees

---

[2] For reasons that are not immediately apparent from a review of their memorandum of law, the City Defendants did not raise any issues relating to municipal liability or qualified immunity. As a result, the Court will not address such issues.

were branded as "disloyal"); *Wisconsin v. Constantineau*, 400 U.S. 433, 436-34 (1971) (holding stigmatizing a public posting identifying an individual as "one who 'by excessive drinking' . . . expos[es] himself or family 'to want' or becom[es] 'dangerous to the peace' of the community"); *Vega*, 596 F.3d at 81-82 ("wrongly classifying [an individual] as a sex offender" sufficiently stigmatizing); *Valmonte v. Bane*, 18 F.3d 992, 1000 (2d Cir. 1994) ("no dispute" that inclusion on a list of alleged child abusers imposed stigma); *Hall v. Marshall*, 479 F. Supp. 2d 304, 316 (E.D.N.Y. 2007) ("allegation that [plaintiff's] rap sheet erroneously recites that he was arrested for murder obviously . . . qualifies as 'stigma'").

Drawing all reasonable inferences in Frascatore's favor, the statement he attributes to "NYPD Sources" is nothing more than an oblique criticism of how Frascatore responded to the Incident. The statement does not name Frascatore, and it does not say his actions were criminal or evil, or even that they were wrong. The statement merely suggests an alternative approach that the source believed would have functioned better. In short, the statement made by the NYPD source is not "sufficiently derogatory to injure the plaintiff's reputation." *Vega*, 596 F.3d at 81.

## B. Race Discrimination Claim

Frascatore has failed to plausibly plead that the CCRB Defendants and the NYPD were motivated by discriminatory intent when they penalized him for his conduct in connection with the Blake incident. To survive a motion to dismiss under Section 1981, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also DeVore v. Neighborhood Hous. Servs. of Jamaica Inc.*, No. 15 Civ. 6218 (PKC), 2017 WL 1034787, at *4 (E.D.N.Y. Mar. 16, 2017) ("At the pleading stage, a plaintiff does not need to prove discrimination, or even allege facts establishing every element of the

McDonnell Douglas prima facie case, but the facts alleged must give plausible support to the reduced requirements of the prima facie case." (citing *Littlejohn*, 795 F.3d at 311) (internal quotation marks omitted)). Courts making the plausibility determination should do so "mindful of the elusive nature of intentional discrimination" and the frequency by which plaintiffs must "rely on bits and pieces of information to support an inference of discrimination, i.e., a mosaic of intentional discrimination." *Vega*, 801 F.3d at 86 (internal citations and quotation marks omitted).

Here, Frascatore asserts that the CCRB Defendants discriminated against him on the basis of race by releasing to the public his personnel file, which they knew "reflected Plaintiff, who is white, aggressively interacting with non-white individuals as a police officer." Am. Compl. ¶ 93. In releasing the documents, Frascatore alleges that the CCRB Defendants "kn[ew] full well Plaintiff would be portrayed as a racist police officer due to his race being different than the non-white individuals with whom he interacted." *Id.* ¶ 95. These actions, Frascatore contends, show that the CCRB Defendants released his personnel records "with a racially discriminatory intent." *Id.* ¶ 98. Frascatore asserts that the NYPD discriminated against him on the basis of race by allowing the CCRB disciplinary process to proceed even though the "entire investigation and prosecution" was "based on the assumption that Plaintiff was a racist, rogue police officer." *See id.* ¶¶ 100-102.

Frascatore clarifies his position in his opposition to the City Defendants' motion to dismiss. He explains that the "only reasonable explanation for the actions of the City Defendants is based on their collective belief that he is a racist. In context, Defendants could only consider Plaintiff a racist because he is white." Pl.'s Opp'n at 2; *see also* Am. Compl. ¶ 39 ("In this instance, Plaintiff could only be portrayed as a racist if he were white.").

Setting aside Frascatore's conclusory assertions, *e.g.*, *id.* ¶ 98 ("Defendants therefore released Plaintiff's personnel records with a racially discriminatory intent. . . ."), Frascatore merely alleges that his personnel records were wrongfully released, and that, as a result, the press portrayed him in an

unfavorable light. Frascatore has identified no racial remarks, no similarly situated non-white peers who were treated better, and no other fact that could plausibly suggest discriminatory intent on the part of the CCRB Defendants, the NYPD, or the City of New York. In short, Frascatore has done no more than describe his mistreatment and ask the Court to conclude that he was mistreated because he was white. This is not sufficient. *See, e.g., Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) ("[Asian American and African American] Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race. This is not sufficient."); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) (dismissing case for "lack of any specific factual support for his claim of a racial motivation" where "[plaintiff] has offered no reason . . . other than his assertion that [defendants] were white and that he is Bengali"); *Iscenko v. City of New York*, No. 16-cv-6535 (LGS), 2017 WL 2880553, at *5 (S.D.N.Y. July 5, 2017) ("To state a claim, Plaintiff must do more than simply 'cite to [his alleged] mistreatment and ask the court to conclude that it must have been related to [his] race.'" (citing *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 235 (2d Cir. 2002); *Howard v. City of New York*, 602 Fed. App'x 545, 548 (2d Cir. 2015))). Having alleged no facts that support Frascatore's claim that the City Defendants' actions were motivated by a racially discriminatory purpose, Frascatore's Section 1981 claim is dismissed.

## C. Defamation

To establish a claim of defamation under New York law, a plaintiff must plead "(1) a defamatory statement of fact; (2) that is false; (3) published to a third party; (4) 'of and concerning' the plaintiff; (5) made with the applicable level of fault on the part of the speaker; (6) either causing special harm or constituting slander per se; and (7) not protected by privilege." *FTA Mkt. Inc. v. Vevi, Inc.*, No. 11 Civ. 4789 (VB), 2012 WL 383945, at *6 (S.D.N.Y. Feb. 1, 2012) (citing *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001)). For purposes of the law of defamation, statements alleged to be defamatory are "of and concerning" a plaintiff where "'the allegedly defamatory

content refer[s] to the plaintiff' such that those knowing the plaintiff 'understand that [she] was the person meant.'" *Gilman v. Spitzer*, 538 Fed. App'x 45, 47 (2d Cir. 2013) (quoting *Brady v. Ottaway Newspapers, Inc.*, 84 A.D.2d 226, 228, 445 N.Y.S.2d 786 (1981); *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). That is, a statement is "of and concerning" a plaintiff if it "could have been understood by a reasonable reader as being, in substance, actually about" the plaintiff. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 399 (2d Cir. 2006).

"[A] threshold issue for resolution by the court is whether the statement alleged to have caused plaintiff an injury is reasonably susceptible to the defamatory meaning imputed to it." *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997) (citations omitted); *Abkco Music, Inc. v. William Sagan, Norton LLC*, No. 15 CIV. 4025 (ER), 2016 WL 2642224, at *3 (S.D.N.Y. May 6, 2016) ("On a motion to dismiss a claim of defamation, the court must decide whether the statements alleged to have caused plaintiff injury are "reasonably susceptible" to the defamatory meaning imputed to them." (quoting *Dworin v. Deutsch*, No. 06 Civ. 13265 (PKC), 2008 WL 508019, at *3 (S.D.N.Y. Feb. 22, 2008)).

"Whether particular words are defamatory presents a legal question to be resolved by the courts in the first instance." *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (citing *Aronson v. Wiersma*, 483 N.E.2d 1138, 1139 (1985)). "Under New York law, (with some exceptions) statements that do not purport to convey *facts* about the plaintiff, but rather express certain kinds of *opinions* of the speaker, do not constitute defamation." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 110-11 (2d Cir. 2017) (emphases in original) (citing *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 779 F.3d 191, 202 (2d Cir. 2015); *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152-54 (1993)). "In discerning whether a statement is actionable under New York law, the Court considers a non-exclusive list of factors that includes: '(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or

false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal [to] . . . readers or listeners that what is being read or heard is likely to be opinion, not fact." *Id.* (citing *Gross*, 82 N.Y.2d at 153).

"In conducting its analysis, the Court 'recognize[s] and utilizes[s] the important distinction between a statement of opinion that implies a basis in facts which are not disclosed to the reader or listener and a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts." *Id.* at 111 (citing *Celle*, 209 F.3d at 178). "'[A] statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts'" is protected as a statement of opinion and thus not a false statement of fact." *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 486 (S.D.N.Y. 2013) (quoting *Gross*, 82 N.Y.2d at 154). Ultimately, the "dispositive inquiry is whether a reasonable reader could have concluded that the statements were conveying facts about the plaintiff." *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 159 (S.D.N.Y. 2016) (citing *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014)).

Frascatore identifies nine statements in the amended complaint that he asserts are defamatory.[3]

- Statement One. This statement appears in the introduction of *Ways of Grace*, and is a description of the Incident. The content of the statement is: "Officer Frascatore did not identify himself as a member of law enforcement, ask me my name, read me my rights, or in

---

[3] Frascatore also references a statement made by Blake that was published in a September 11, 2015 New York *Daily News* article. Blake urges the Court not to consider this statement because it was published before the one-year limitations period. *See* Def.'s Mem. at 12 n.5. Indeed, under New York law, actions for defamation, including libel and slander, are subject to a one-year statute of limitations, measured from the date of publication of the allegedly defamatory statement. N.Y. C.P.L.R. § 215(3); *Blair v. Meth*, 977 N.Y.S.2d 318, 318 (App. Div. 2013). In his opposition, Frascatore does not contest that his claim based on this statement is time-barred. As a result, the Court will not consider this statement as part of Frascatore's defamation claim.

any way afford me the dignity and respect due every person who walks the streets of this country." Am. Compl. ¶ 44

- Statement Two. This statement appears in the introduction of *Ways of Grace*, where Blake is discussing a New York *Times* article titled "Officer Who Arrested James Blake Has History of Force Complaints." Blake explains that the *Times* article describes three complaints of excessive force by Frascatore. The content of the statement is: "You have to wonder if those three reports are really forty, or a hundred, because he had not reported them in the same way he had not reported mine." *Id.* ¶ 45.

- Statement Three. This statement appears in the introduction of *Ways of Grace*. The content of the statement is: "It is important to understand that racism never went away, nor racial profiling, nor unconstitutional practices that target specific demographics, *like stop-and-frisk practices, mass incarceration of certain demographics*, the use of excessive force by police, and a lack of accountability. I don't think racism and discrimination will ever go away until we create change in several areas, and one of them is in police conduct. *This is a cause I am passionate about, and I will speak up and advocate for more oversight, even if it makes America and the media uncomfortable.*" Marino Decl. at 15 (emphasis added).[4]

- Statement Four. This statement appears in the "Book Description" of *Ways of Grace* from Blake's website. The content of the statement is: "Like many people of color, James Blake has experienced the effects of racism firsthand—publicly—first at the U.S. Open, and then in front of his hotel on a busy Manhattan street, where he was tackled and handcuffed by a police officer in a case of 'mistaken identity.' Though rage would have been justified, Blake

---

[4] In the Amended Complaint, Frascatore omitted a portion of this quotation without indicating that there was an alteration. *Compare* Marino Decl. at 15 *with* Am. Compl. ¶ 46. The portion that was omitted in the Amended Complaint is italicized.

faced both incidents with dignity and aplomb." Am. Compl. ¶ 47.

- <u>Statement Five</u>. Blake made this statement during an August 30, 2017 episode of the television show The Daily Show on Comedy Central. The content of the statement is: "I told a lot of my friends what happened. And they joked about it and everything. It was fine. And . . . No big deal. I told 'em I'm fine, you know? Everything's okay. I'm—I'm all right. You know, my family's healthy. Everything's okay. It's not . . . you know, not the end of the world. And then they saw the video, and I got people that called me. There were friends of mine that said, 'I can't believe that. I got sick to my stomach. I can't believe this actually happens to you.' And it—it was almost like a switch went on, 'cause they see . . . If someone sees a video of Terence Crutcher, of, um, uh, Michael Brown, of, um . . . you know, of Eric Garner, Philando Castile, they see those, they don't have a connection with them. But the people that actually had a connection with me, now this just became real." *Id.* ¶ 49.

- <u>Statement Six</u>. Blake made this statement during a September 19, 2017 episode of the television show PBS NewsHour. The content of the statement is: "I think almost every person of color at some point in their life has been profiled, whether it be walking into a store or driving your car and you're pulled over for no reason or anything to that extent. So, I have had instances like that, but never physical — physical violence like this." *Id.* ¶ 50.

- <u>Statement Seven</u>. This statement appears in the body of *Ways of Grace*. The content of the statement is: "I want to use my voice to speak out and to help raise awareness and accountability and make sure that any officer with a discriminatory pattern of behavior gets the training he or she needs." Marino Decl. at 18.

- <u>Statement Eight</u>. This statement appears in the introduction of *Ways of Grace*. The content of the statement is: "That afternoon, the police department issued a statement, which wasn't

surprising since my interview had just hit the airwaves online in the media. What was surprising was the statement they issued. Although the officers on the scene admitted that something had occurred, their version of the events was very different from mine. They claimed that I was detained for less than a minute, was not manhandled, and that I was never in handcuffs. I couldn't believe it, but it was the word of five officers against mine." *Id.* at 9.

- <u>Statement Nine</u>. This statement appears in the introduction of *Ways of Grace*. The content of the statement is: "[The arresting officers] didn't believe me until about ten minutes later when another officer, an older man, arrived on the scene. As I watched him examine my ID I could see that he realized there was a problem. After he looked at my license and I told him that I was a professional tennis player and was heading to the Open, he took out his phone and appeared to be looking something up. Then he looked again at my ID and what must have been a picture of me on his phone. That's when he apologized and had the other officers uncuff me. He was the only one, of the five or six officers there, who apologized. The officer who tackled me, whose last name I later found out is Frascatore, never did." Marino Decl. at 8.

Frascatore's defamation claim must be dismissed for two fundamental reasons. First, Frascatore failed to allege that Blake made any of the challenged statements in a grossly irresponsible manner. Second, Frascatore failed to allege that seven out of the nine statements were false. For those two reasons, and for multiple reasons specific to each individual statement, Frascatore's defamation claim is dismissed.

Under New York law, where the plaintiff is a private figure and "where the content . . . is arguably within the sphere of legitimate public concern," the plaintiff must plead that "the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Enigma Software Grp. USA,*

*LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 287 (S.D.N.Y. 2016) (citing *Ratajack*, 178 F.

Supp. 3d at 160; *Chapadeau v. Utica Observer–Dispatch, Inc.*, 38 N.Y.2d 196, 199 (1975)).[5] The Incident

is an issue of public concern because it involves allegations of excessive force by police. *See, e.g.*,

*Jackler v. Byrne*, 658 F.3d 225, 237 (2d Cir. 2011) ("[P]olice malfeasance consisting of the use of

excessive force is plainly a matter of public concern."); *Gomez v. City of New York*, No. 15-CV-7524

(JPO), 2017 WL 3736693, at *7 (S.D.N.Y. Aug. 29, 2017).

      Frascatore failed to allege that Blake made any of the statements in a grossly irresponsible

manner. Frascatore did not allege that Blake obtained the information reflected in the allegedly

defamatory statements from unreliable sources, or otherwise "without due consideration for the

standards of information gathering," *Enigma Software Grp. USA, LLC*, 194 F. Supp. 3d at 287.

Instead, in making the allegedly defamatory statements, Blake was recounting his own subjective

recollection or expressing subjective opinion. Frascatore does not make any allegations to the

contrary anywhere in the Amended Complaint.

      Frascatore also does not allege sufficient facts to demonstrate the falsity of Statements Two,

Three, Four, Five, Six, Seven, or Eight. This alone requires dismissal of Frascatore's claims as to

those statements. *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir.

2017) ("[A] plaintiff must plead facts demonstrating falsity to prevail on a motion to dismiss the

complaint in federal court.").

      Other factors require the dismissal of Frascatore's defamation claim as to each individual

---

[5] "[W]hile *Chapadeau* itself was about the liability of a media defendant for statements contained in a published article, the standard also governs suits by private plaintiffs . . . against non-media defendants . . . if the allegedly defamatory statements were 'arguably within the sphere of public concern' and admit of measurement by the *Chapadeau* standard, at least when they are publicly made." *Albert v. Loksen*, 239 F.3d 256, 269 (2d Cir. 2001) (citing *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 101-02 & n.8 (2d Cir. 2000)). Although Frascatore is a private plaintiff and has brought the action against Blake, a non-media defendant, the *Chapadeau* standard applies because the allegedly defamatory statements are "arguably within the sphere of public concern."

statement.

Statement One, that Frascatore did not "afford [Blake] the dignity and respect due every person who walks the streets of this country," is a non-actionable statement of opinion. To start, the statement expresses Blake's personal views regarding an appropriate standard of conduct, which could be interpreted by different people in different ways. *Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*, No. 15 CV 4779-LTS-SN, 2016 WL 1717218, at *2 (S.D.N.Y. Apr. 28, 2016) (concluding that statements in question were non-actionable statements of opinion where the statements were "hyperbolic and imprecise," and "may mean different things to different people."). In addition, because Statement One expresses Blake's opinion regarding an appropriate standard of conduct, it is not capable of being proven true or false. *See, e.g.*, *Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*, No. 18CV581, 2018 WL 4103583, at *7 (S.D.N.Y. Aug. 29, 2018) (dismissing defamation claim based on musical artist's statement that her "fans deserve better than how some of these promoters treated them" in part because the statement was not capable of being proven true or false); *Live Face on Web, LLC*, 2016 WL 1717218, at *2 (concluding that defendant's statements that the plaintiff's litigation was "frivolous" and that the plaintiff subjected "unsuspecting victims to [its] legal wrath" "are not capable of being proven true or false because of their subjective, relative meanings.").

In addition, Statement One is "a statement of opinion that is accompanied by a recitation of the facts." *Elias*, 872 F.3d at 111. Blake provided the basis for his opinion—the details of his encounter with Frascatore. A reasonable reader would understand that Blake's opinion that he was not afforded the appropriate level of "dignity" and "respect" was based on his interaction with Frascatore, which he described in detail. As a result, his claim for defamation based on this statement is dismissed.

Statement Two is also a non-actionable statement of opinion. Commenting on an article in

the New York *Times* about Frascatore, Blake queries whether Frascatore might have been the subject of more than three reported complaints of excessive force.  Def.'s Mem. at 9-10.  Importantly, Statement Two is plainly a "a statement of opinion that is accompanied by a recitation of the facts," *Elias*, 872 F.3d at 111, because it discloses the publication, date, and title of the article on which the speculation in the statement is based, Def.'s Mem at 9-10; *Mirage Entm't, Inc.*, 2018 WL 4103583, at *7 (dismissing defamation claim in part because it was clear that the basis for the speaker's opinion was an article to which the speaker provided a link); *Brahms v. Carver*, 33 F. Supp. 3d 192, 200 (E.D.N.Y. 2014) (dismissing defamation claim because the internet posting at issue "was accompanied by the news article on which it was so obviously based").  In addition, the language of speculation—that Blake "wonder[s]" whether there are more complaints—is conjectural and not susceptible to an interpretation that it is a statement conveying facts.  *See, e.g.*, *Gardner v. Honest Weight Food Co-op., Inc.*, 96 F. Supp. 2d 154, 161 (N.D.N.Y. 2000) ("[A]llegations premised upon speculation and conjecture, as well as loose, figurative or hyperbolic statements, even if deprecating the plaintiff, do not constitute actionable defamation." (internal citations, alterations, and quotation marks omitted)).

Statement Three cannot reasonably be interpreted as being "of or concerning" Frascatore.  In the passage in question, Blake pontificates generally about racism, racial profiling, and "unconstitutional practices that target specific demographics," among other things.  Marino Decl. at 15.  Although Blake references "the use of excessive force by the police," which could, considering the context, implicate Frascatore, immediately before the reference to excessive force, Blake also lists "stop-and-frisk practices" and "mass incarceration."  *Id.*  Reviewing the full paragraph in which the quotation appears, it is clear that Blake is writing about the issue of alleged disparate treatment of racial minorities in the American criminal justice system generally.  That is clearly the "cause [he is] passionate about," not specifically the Incident with Frascatore.  Considering the full context in

which Statement Three appears, including the discussion of other societal problems not linked to Frascatore, no reasonable reader would understand Statement Three to be about Frascatore in particular. *See Kirch*, 449 F.3d at 399. In addition, as discussed above, Frascatore does not allege that Statement Three is false, which alone requires the dismissal of the defamation claim as to this statement.

Statement Four—that Blake "has experienced the effects of racism firsthand"—is a non-actionable statement of opinion. The context in which the statement was made—a book about activism, adversity, and how sports "bring [people] together," *see* Am. Compl. ¶ 47—signals to readers to expect such statements of the author's opinions. In addition, Blake discloses the facts on which his opinion is based, both within the challenged statement and throughout the book. *See, e.g.*, Marino Decl. at 3-4 (describing the Incident in detail). Indeed, in the challenged statement, Blake asserts that he experienced the effects of racism when "he was tackled and handcuffed by a police officer in a case of 'mistaken identity.'" Blake's disclosure of the facts underpinning his opinion defeats Frascatore's defamation claim as to this statement. *See e.g., Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 1055 (N.Y. App. Div. 2015) (affirming lower court's grant of motion to dismiss and concluding that statements that plaintiff had authored "racist writings" and had "ties to a white supremacist group" were nonactionable because the defendant had fully disclosed the facts supporting the opinions); *Morgan v. NYP Holdings, Inc.*, 58 Misc. 3d 1203(A) (N.Y. Sup. Ct. 2017) (dismissing defamation claim based in part on the conclusion that "any implication that plaintiff is anti-Semitic constitutes a non-actionable opinion which is based on disclosed facts."); *see also Ratajack*, 178 F. Supp. 3d at 165 (granting summary judgment where statement that plaintiff was a "racist or a future threat to others" was a nonactionable opinion because the speaker "[took] pains to detail the facts underlying his accusations" and because the context in which the statements were made "[made] clear that its content is opinion").

No reasonable reader could not have interpreted Statement Five, Blake's statement that watching the video of the Incident made the experience "bec[o]me real" to his friends, as conveying facts about Frascatore, nor could a reasonable reader have understood an unspoken analogy to infamous incidents of police violence to be conveying facts about Frascatore. In addition, as discussed above, Frascatore does not allege that this statement regarding Blake's friends' reactions to watching the video of the Incident is false.

Statement Six, which could reasonably interpreted to suggest that the Frascatore incident involved racial profiling, is not actionable because Blake provides the facts underpinning his opinion. As with Statement Four, Blake disclosed at length the facts about the Frascatore incident, which is the basis for any implication that the incident involved racial profiling. Marino Decl. at 3-4. Blake's disclosure of the facts underpinning his opinion defeats Frascatore's defamation claim as to this statement. *See e.g.*, *Silverman*, 129 A.D.3d at 1055; *Morgan*, 58 Misc. 3d 1203(A); *see also Ratajack*, 178 F. Supp. 3d at 165.

Statement Seven is a non-actionable statement of opinion. Although Statement Seven does not name Frascatore, drawing all reasonable inferences in Frascatore's favor, the statement "could have been understood by a reasonable reader as being, in substance, actually about" the plaintiff. *Kirch*, 449 F.3d at 399. Shortly before Statement Seven, Blake describes the incident, and also describes Frascatore's history of excessive force complaints. *See* Marino Decl. at 12, 17-18. To the extent that Statement Seven is read to imply that Frascatore has a "discriminatory pattern of behavior," Blake discloses the basis for that opinion—that Frascatore has at least three excessive force complaints, as reported in the article that Blake cites. *See id.* at 11-12. As a result, Frascatore's defamation claim as to this statement is dismissed. *See e.g.*, *Medcalf*, 938 F. Supp. 2d at 486.

As referenced above, Frascatore failed to plead sufficient facts demonstrating falsity regarding Statement Eight. *See Tannerite Sports, LLC*, 864 F.3d at 247. In the challenged statement,

Blake describes how "[the officers'] version of the events was very different from mine." Am. Compl. ¶ 43. Frascatore contends that Blake's "statements are belied by the paperwork filed by the officers, including the voided arrest form and email sent to supervisors on the day of the incident." *Id.* However, Blake's contention in Statement Eight is that his version of events was different than the officers' version of events. As a result, rather than demonstrating the falsity of Blake's statement, Frascatore's allegations confirm Blake's statement—that Blake's version of events and the officers' version of events are inconsistent. As such, Frascatore has failed to plead facts demonstrating how this statement was false, and his defamation claim as to this statement must be dismissed.

Finally, as referenced above, Frascatore failed to plead that Blake made Statement Nine in a grossly irresponsible manner. The allegation that Blake recounted events differently than Frascatore recalls them does not, without more, constitute grossly irresponsible conduct. Although Frascatore asserts that Statement Nine is in "direct contradiction of the video evidence," Am. Compl. ¶ 42, he later recounts that the video only shows Frascatore "extend[ing] his hand to Blake" and "pat[ting] Blake on the shoulder," *id.* ¶ 34. Though these gestures may appear conciliatory, they do not necessarily constitute an "apology." Finally, Blake did not source this information "without due consideration for the standards of information gathering," *Enigma Software Grp. USA, LLC*, 194 F. Supp. 3d at 287; instead, he was recounting his own subjective recollection.

The Court's conclusion that Frascatore has failed to plead that Blake made Statement Nine with the requisite degree of fault is not inconsistent with the Court's obligation to take as true the facts pleaded in the complaint. Frascatore alleged that he apologized to Blake after the Incident, *id.* ¶ 25 and Blake wrote that Frascatore did not apologize, *id.* ¶ 42. These versions of events are directly at odds, and the Court is required to credit Frascatore's version at the motion to dismiss stage. However, the relevant inquiry is whether Frascatore pleaded that Blake made the statement in

question in a grossly irresponsible manner, which Frascatore failed to do. As a result, the defamation claim as to Statement Nine must be dismissed.

## IV. CONCLUSION

For the reasons stated above, the City Defendants' motion to dismiss, ECF No. 40, and Blake's motion to dismiss, ECF No. 43, are GRANTED.

Frascatore is granted leave to replead his stigma-plus claims, his race discrimination claim, and his defamation claim arising out of Statements Eight and Nine no later than thirty (30) days following the date of this order. *See Rutolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (noting that leave to amend is "liberally granted"). Because the Court has concluded that Statements One through Seven are not actionable, Frascatore's defamation claim arising out of those statements is dismissed with prejudice.

The Clerk of Court is directed to close the motions pending at ECF Nos. 40 and 43.

SO ORDERED.

Dated: September 25, 2018
New York, New York

_____
GREGORY H. WOODS
United States District Judge